IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID PETERSEN,                          )
                                         )
            Plaintiff,                   )            4:08CV3178
                                         )
    v.                                   )
                                         )
MICHAEL J. ASTRUE, Commissioner of       )        MEMORANDUM AND ORDER ON
Social Security,                         )        DEFENDANT'S MOTION TO ALTER OR
                                         )           AMEND THE JUDGMENT
            Defendant.                   )
                                         )
_____        )


        The Commissioner of the Social Security Administration has filed a motion to alter or

amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).  (See filing 22.)  The

Commissioner's motion will be denied.


                              **I.    BACKGROUND**[1]

        The plaintiff worked as a military technician in the Nebraska Air National Guard from

January 1972 until his retirement in October 2000.  (See Transcript of Social Security

Proceedings (hereinafter "Tr."), filing 13, at 13.)  After his retirement, he began to receive a

pension based on his service in that position.  (See id.)  On April 20, 2006, the plaintiff filed an

application for retirement insurance benefits, (see id. at 17), but the Social Security

Administration determined that the plaintiff's benefits would be reduced due to his pension, (id.

at 22).  After his request for reconsideration of this determination was denied, (see id. at 25-28),

the plaintiff sought a hearing before an Administrative Law Judge (ALJ), (see id. at 29).  The

ALJ deemed a hearing unnecessary, however, and instead issued a decision "fully favorable" to

the plaintiff.  (Id. at 12.)  In this decision, the ALJ concluded that the plaintiff's retirement

insurance benefits were not properly reduced pursuant to the Windfall Elimination Provision of

_____

        [1]The relevant facts are summarized in more detail in my memorandum and order of
February 23, 2009.  (See filing 20 at 2-4.)

1

the Social Security Act (WEP), 42 U.S.C. § 415(a)(7)(A), because the plaintiff's "monthly pension as a military technician is based wholly on his service as a member of a 'uniformed service[.']" (Id. at 14.)  The ALJ also noted that the facts of this case are identical to those of Price v. Barnhart, No. 03-0005-CV-C-WAK (W.D. Mo. Jan. 5, 2004), which holds that a pension based on service as a technician in the Nebraska Air National Guard falls within the WEP's "uniformed service" exception.  (Tr. at 13.  See also id. at 57-59.)

On June 18, 2008, the Appeals Council reversed the ALJ's decision.  (See Tr. at 6-8.)  In so doing, the Appeals Council found no error in the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable." (Id. at 6.)  It reasoned, however, that because Social Security taxes were not withheld from the pay that the plaintiff received from the Nebraska Air National Guard for his work as a military technician, it necessarily followed that his pay was not "paid to him as a member of the uniformed service on active duty." (Id. at 7.)  In the converse, the Appeals Council explained that if the plaintiff's National Guard pay had been for "active duty" uniformed service, Social Security taxes would have been withheld from his pay, and his retirement benefits would not be subject to the WEP's "modified benefit formula"–but "he would not be entitled to a non-covered pension." (Id.)  The Appeals Council's decision represents the final decision of the Commissioner of the Social Security Administration.

On August 20, 2008, the plaintiff filed the instant action.  (See Compl., filing 1.)  After studying the parties' briefs, (see Pl.'s Br., filing 15; Def.'s Br., filing 17; Pl.'s Reply Br., filing 19), I determined that the Commissioner's decision should be reversed, (see filing 20).  In reaching this determination, I noted first that "[n]o deference is owed to the Commissioner's legal conclusions." (Filing 20 at 5 (citing Brueggemann v. Barnhart, 348 F.3d 689, 692 (8th Cir. 2003); Hutchison ex rel. Hutchison v. Chater, 99 F.3d 286, 288 (8th Cir. 1996)).)  I then considered the plain language of the WEP and found that, in light of the relevant facts, the plaintiff's pension falls clearly within the exception that applies to "a payment based wholly on service as a member of the uniformed service." (Id. at 7.)  I also rejected the Commissioner's argument that dual status military technicians' statutory designation as "Federal civilian

employees" means that the technicians cannot be considered "members of a uniformed service" within the meaning of the WEP.  (Id. at 8.)

On March 9, 2009, the Commissioner filed the instant "motion to alter or amend," (filing 22), which asks me to "affirm the Commissioner's decision because [my] order represents a manifest error of law and is contrary to federal statutes and regulations," (Def.'s Br., filing 23, at 1 (citation omitted)).  My analysis of the Commissioner's motion follows.

## II.   STANDARD OF REVIEW

"A motion to alter or amend a judgment under Rule 59(e) is intended to correct manifest errors of law or fact or to present newly discovered evidence.  Arguments and evidence which could, and should, have been raised or presented at an earlier time in the proceedings cannot be presented in a Rule 59(e) motion."  Johnson v. Chater, 108 F.3d 942, 945 n.3 (8th Cir. 1997) (citations omitted).  See also Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2617 n. 5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (citation omitted)).

## III.   ANALYSIS

The defendant asks that I reconsider my analysis of the applicability of the "uniformed service" exception to the WEP and my determination that no deference is owed to the Commissioner's interpretation of the statute.  (See generally Def.'s Br., filing 23.)  I shall consider the defendant's arguments in turn.

## A.   Whether My Determination that the Plaintiff's Pension Constitutes "a Payment Based Wholly on Service as a Member of a Uniformed Service" Represents a Manifest Error of Law

The defendant argues first that I erred in concluding that the WEP exception for "payment[s] based wholly on service as a member of a uniformed service" applies in this case. The defendant states,

3

> Plaintiff argued, and the Court found, that Plaintiff's civilian employment with the Nebraska National Guard was uniformed service solely because Plaintiff was required to be enlisted in the Nebraska National Guard as a condition of his employment. The Court reasoned that because the National Guard is a "uniformed service" and Plaintiff was required to enlist in the National Guard as a condition of his civilian employment with the National Guard, he was a "member of a uniformed service" in both his military enlistment and his civilian employment. The Court's finding that military technicians are members of a uniformed service is contrary to the legislative intent of the National Guard Technicians Act of 1968 (NGTA) and subsequent amendments to 32 U.S.C. § 709.

(Def.'s Br., filing 23, at 2 (citations omitted).) The defendant goes on to argue that, in accordance with 32 U.S.C. § 709(b)(1) and 10 U.S.C. § 10216(a), military technicians are defined as "federal civilian employees." (See Def.'s Br., filing 23, at 2-3.) He then argues that because military technicians have this civilian "status," the plaintiff was not a member of the National Guard "during [his] regular work tour" and was "not [a] member[] of the uniformed service for purposes of the WEP." (See id. at 4-6.)

Preliminarily, I note that my finding that the plaintiff served "as a member of a uniformed service" was not based "solely" on the fact that the plaintiff was required to be a member of the Nebraska Air National Guard as a condition of his employment. In addition, I cited the ALJ's finding that, "while working as a National Guard technician, the [plaintiff] . . . was required to wear a National Guard uniform appropriate for his grade and component of the Armed Forces on a daily basis; was subject to military supervision and discipline, including courts-martial; was required to maintain military physical fitness qualifications; . . . would lose his job if he failed to meet any of the above military requirements[;] and . . . was subject to being called to active military duty in the United States Air Force." (See filing 20 at 6 (quoting Tr. at 13 (with relevant text reproduced in full at page 3 of filing 20)).) These findings illustrate that the plaintiff's membership in the Nebraska Air National Guard was more than a mere formality; rather, the plaintiff served in his military technician position "as a member of" the Nebraska Air National Guard.

In any event, the defendant's objection to my finding that the WEP exception applies in this case is based primarily on an argument that military technicians have a civilian "status" that is incompatible with membership in a uniformed service. This argument is problematic for a

4

number of reasons.

In the first place, the "status" of a person who performs service as a member of a uniformed service–whether it be "civilian status," "military status," "active duty status," or "dual status"–is simply not at issue under the plain language of 42 U.S.C. § 415(a)(7)(A). As I explained more thoroughly in my February 23 memorandum, the exception set forth in § 415(a)(7)(A) applies to "a payment based wholly on service as a member of a uniformed service," and the evidence shows that the plaintiff's pension payments are indeed such payments: the Nebraska Air National Guard is a "uniformed service"; the plaintiff's pension payments are based "wholly on service" as a military technician with the Nebraska Air National Guard; and the plaintiff performed this military technician service "as a member of" the Nebraska Air National Guard. (See filing 20 at 6-7.) On its face, the statute lacks additional requirements that might limit the scope of the exception in a way that excludes the plaintiff's service due to his "status." Section 415(a)(7)(A) does <u>not</u> state, for example, that the exclusion applies to "a payment based wholly on service as a member of a uniformed service <u>who is not designated as a Federal civilian employee</u>." It does not state that the exception applies only to "<u>non-civilian</u> service as a member of a uniformed service." Nor does it state that the exclusion applies only to "a payment based wholly on service as a member of a uniformed service <u>on active duty</u>," whatever that might mean. (See Tr. at 7.) Rather, it requires only that the payment be "based wholly on <u>service as a member</u> of a uniformed service." The plain language of the statute is unambiguous, the facts clearly show that the plaintiff's pension is based wholly on service that he performed as a member of a uniformed service, and I am not persuaded that new restrictive terms ought to be read into the statute.

Second, even if I were to assume that the plaintiff's "status" is somehow relevant, defining his status is not as straightforward an exercise as the defendant seems to suggest. Section 10216 describes a person who holds the position at issue as "<u>dual</u> status," a "<u>military</u> technician," and, as the defendant emphasizes, "a Federal <u>civilian</u> employee." It should be noted, however, that although dual status military technicians are indeed labeled "Federal civilian employee[s]," they are "authorized and accounted for as a <u>separate category</u> of civilian employees." 10 U.S.C. § 10216(a)(1)-(2). In other words, § 10216 indicates that the plaintiff's

civilian "status" is distinct from that of ordinary civilian government employees.[2]  Moreover, the relevant statutes (i.e., 10 U.S.C. § 10216(a) and 32 U.S.C. § 709(b), which cross-reference one another), require that these "civilian" employees "maintain membership in the Selected Reserve," be "member[s] of the National Guard," "[h]old the military grade specified by the Secretary concerned for that position," and, "[w]hile performing duties as a military technician (dual status), wear the uniform appropriate for the member's grade and component of the armed forces."  In short, these technicians are members of a uniformed service serving in a unique category of civilian positions.  It seems to me that the plaintiff's "status" is best described as "dual."  Indeed, the "hybrid nature" of a military technician's job is apparent on the face of the relevant statutes, and the ALJ's findings concerning the plaintiff's work as a National Guard technician "confirm that his job is neither fish (totally civilian) nor fowl (totally military)."  Willis v. Roche, 256 F. App'x 534, 536-37 (3d Cir. 2007).

Third, even if I assume that the plaintiff's "status" as a military technician is properly labeled "civilian," it does not follow that the plaintiff was not "a member of a uniformed service."  The defendant argues, "Section 709 of Title 32 and section 10216 of Title 10 clearly demonstrate that military technicians are not members of the National Guard during their regular work tour." (Def.'s Br., filing 23, at 4 (citations omitted) (emphasis added).)  I find, however, that the statutes demonstrate the opposite: Congress has drawn a specific distinction between dual status military technicians (such as the plaintiff), who must be members of the National Guard as a condition of their employment, and non-dual status technicians, who are not required to be members of the National Guard.  Compare 10 U.S.C. § 10216(a)(1)(B) and 32 U.S.C. § 709(b)(2) with 10 U.S.C. § 10217(a)(2) and 32 U.S.C. § 709(c).  Whenever a dual status military technician ceases to be a member of the National Guard, his "work tour" as a dual status military technician must promptly end.  See 32 U.S.C. § 709(f)(1)(A).  The relevant statutes weigh strongly against the defendant's position.

---

[2]By way of example, dual status military technicians are "exempt from any requirement (imposed by law or otherwise) for reductions in Department of Defense civilian personnel and shall only be reduced as part of military force structure reductions."  10 U.S.C. § 10216(b)(3) (emphasis added).

Nevertheless, the defendant submits that "several additional provisions" of § 709 demonstrate "that Congress did not intend for military technicians to be considered members of a uniformed service." (Def.'s Br., filing 23, at 4.)  First, citing 32 U.S.C. § 709(b)(2), the defendant states, "the fact that certain military technicians must be enlisted in the National Guard clearly demonstrates that their enlistment in the National Guard is separate from their employment with the National Guard." (Def.'s Br., filing 23, at 4.)  To the extent that the defendant claims that a statute that <u>requires</u> dual status military technicians to be members of a uniformed service, <u>see</u> 32 U.S.C. § 709(b)(2), demonstrates that "Congress <u>did not intend</u> for military technicians to be considered members of a uniformed service," (Def.'s Br., filing 23, at 4 (emphasis added)), his argument is self-defeating.  Alternately, to the extent that the defendant means to argue that the plaintiff was not serving in his capacity as a member of the Nebraska Air National Guard while working as a military technician for the National Guard, his argument is equally unpersuasive.  I do not conclude that a statutory requirement that a military technician be a member of the National Guard "clearly demonstrates" that the technician is not serving as a member of the National Guard when he performs his duties.  Indeed, the relevant statutes and the ALJ's description of the circumstances of the plaintiff's service support the opposite conclusion. There is no indication that a dual status military technician's "employment" is severable from his "enlistment."

The two remaining points offered by the defendant in support of his claim that military technicians are not meant "to be considered members of a uniformed service" are no more convincing.  (Def.'s Br., filing 23 at 4.)  First, the defendant argues,

> [S]ection 709 exempts certain military technicians from the dual status requirement (i.e., employment with and concurrent membership in the National Guard), but makes no distinction between the employment rights and benefits afforded to dual status and non-dual status technicians.  Indeed, the fact that military technicians are referred to as "dual status" or "non-dual status" indicates that the required National Guard membership confers a distinct "status" upon technicians enlisted in the National Guard that is separate from the technicians' status as a civilian employ[ee] of the National Guard.

(Def.'s Br., filing 23, at 4-5 (citation omitted).)  Again, the defendant refers to military technicians' "required National Guard membership" in support of an argument that the

7

technicians are not members of the National Guard, which seems to be self-defeating.  I also note that, despite his earlier emphasis on the significance of military technicians' civilian status "for all purposes," the defendant here suggests that, by virtue of their Guard membership, dual status technicians actually have a "distinct 'status' . . . separate from the technicians' status as a civilian employ[ee]."  This seems to reinforce my observation that the "status" of dual status military technicians is best categorized as "dual."  In any case, I fail to see how the defendant's argument advances his claim that military technicians should not be considered members of a uniformed service for the purposes of the WEP.  An absence of distinctions "between the employment rights and benefits afforded to dual status and non-dual status technicians" does not lead to the conclusion that dual status technicians do not serve as members of the National Guard.  The relevant statutes and the ALJ's findings support the opposite conclusion.  Also, although the view that "dual status" technicians have more than one status is noncontroversial, it does not follow that a person serving as a dual status technician is not serving as a member of the National Guard.

> The defendant adds,
>
> Finally, without distinguishing between dual status and non-dual status military technicians, section 709 states, "A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States."  The only employment status distinction made between dual status and non-dual status military technicians is that those technicians who are required to be a member of the National Guard are "outside the competitive service."  This distinction in itself further supports a finding that dual status military technicians are civil service employees.

(Def.'s Br., filing 23, at 5 (citation omitted).)  Again, I do not understand how these observations support the defendant's argument that dual status military technicians–who are required to be members of the National Guard as a condition of their technician service–are not members of a uniformed service for the purposes of the WEP.  Indeed, the fact that dual status military technicians are placed "outside the competitive service" by virtue of their National Guard membership seems to weigh against the defendant's position.[3]

---

[3]The "competitive service" is defined at 5 U.S.C. § 2102.

8

Finally, the defendant argues that the analysis set forth in Jentoft v. United States, 450 F.3d 1342 (Fed. Cir. 2006), is "applicable to this case and support[s] Defendant's contention that military technicians are not members of the uniformed services for purposes of the WEP." (Def.'s Br., filing 23, at 6.)  In Jentoft, a former dual status military technician filed a complaint against the government alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d), and the Fair Labor Standards Act, 20 U.S.C. § 201 et seq.  For present purposes, the key issue confronting the court was whether Jentoft's Equal Pay Act claim was barred under the Feres doctrine–which, generally speaking, prohibits United States military personnel from bringing actions based on injuries suffered incident to their service in the armed forces.  See Feres v. United States, 340 U.S. 135 (1950); see also Jentoft, 450 F.3d at 1349 (describing the subsequent extension of the original holding in Feres).  The Feres doctrine is based on the notion that a disruption to the "unique relationship between the government and military personnel" could occur if a "soldier were allowed to hale his superiors into court."  Jentoft, 450 F.3d at 1349 (citation omitted).  The Federal Circuit concluded that Jentoft's Equal Pay Act claim was not barred under the Feres doctrine because: 1) the Equal Pay Act provides protection to "any individual employed by the Government of the United States . . . as a civilian in the military departments (as defined in section 102 of Title 5)," see 29 U.S.C. § 203(e)(2)(A)(i); and 2) section 10216(a) states that a dual status military technician is a Federal civilian employee.  Jentoft, 450 F.3d at 1348 (citation omitted).  The court explained that "under the plain language of the Equal Pay Act, Jentoft has a justiciable claim against the government provided that she is a qualified employee, viz., a federal civilian employee," and pursuant to § 10216(a), she is a federal civilian employee.  450 F.3d at 1348.  The court also found that, although Jentoft's Equal Pay Act claim would seem to be barred under the Feres doctrine, the court was "enjoined to give priority to the statutory enactment of Congress [(i.e., § 10216(a))] over decisions that preceded it [(i.e., Feres)]."

Of course, the Feres doctrine is not implicated in the instant case and the instant case is readily distinguishable from Jentoft based on the clear differences in the relevant portions of the WEP and the Equal Pay Act.  In Jentoft, the definitions applicable to Equal Pay Act claims rendered the special civilian aspect of employment as a dual status military technician dispositive.  See 29 U.S.C. § 203(e)(2)(A)(i).  Here, in contrast, the civilian aspect of the

9

plaintiff's employment is not relevant under the plain language of the WEP.  The WEP's exception applies to "a payment based wholly on service as a member of a uniformed service," 42 U.S.C. § 415(a)(7)(A), and the record demonstrates that the plaintiff's pension is a payment based wholly on service that he performed as a member of the Nebraska Air National Guard.  The civilian aspect of employment as a dual status military technician does not negate the fact that the plain and unambiguous terms of the WEP's exception are satisfied.[4]

In summary, I remain persuaded that the plaintiff's pension falls within the "uniformed service" exception to the WEP.  The plaintiff served in a unique "civilian" position as a member of the Nebraska Air National Guard, and this "service as a member of the uniformed service" places his pension payments within the plain language of the exception.  The defendant's request that I reconsider this finding results in a reconsideration but no change in result.

**B.  Whether My Determination that No Deference Is Owed to the Commissioner's Interpretation of 42 U.S.C. § 415(a)(7)(A) Represents a Manifest Error of Law**

In my February 23 memorandum, I found that I owe no deference to the Commissioner's

_____

[4]I note parenthetically that in analogous cases, other circuit courts of appeals have not uniformly followed the Federal Circuit's analysis in Jentoft.  For example, in Walch v. Adjutant General's Dept. of Texas, 533 F.3d 289, 297 (5th Cir. 2008), the Fifth Circuit held, "Technicians have a dual status.  It is not possible to disentangle for these purposes their military role and command structure from their civilian employment, such that suits under Sections 1983 and 1985 or Bivens may proceed without raising the same [Feres] concerns as when those claims are brought by traditional Guardsmen."  Also, the Sixth Circuit has held that "the National Guard technician position is 'irreducibly military' for purposes of the Feres doctrine," which bars National Guard technicians' claims under the Age Discrimination in Employment Act.  Brown v. Roche, 206 F. App'x 430, 432 (6th Cir. 2006) (citing Fisher v. Peters, 249 F.3d 433 (6th Cir. 2001)).  In Hupp v. United States Dep't of the Army, 144 F.3d 1144, 1148 (8th Cir. 1998), the Eighth Circuit found that, even if one assumes that Title VII applies to "National Guard civilian technicians," a Title VII claim raised by such a technician is non-justiciable under the Feres doctrine if the "hiring decision at issue . . . involve[d] an assessment of military qualifications."  Thus, it is unlikely that the Eighth Circuit would agree with Jentoft's holding that the Feres doctrine is completely overridden by § 10216(a).  More to the point, there is no indication that the Eighth Circuit would be inclined to find that, for the purposes of 42 U.S.C. 415(a)(7)(A), the reference to "civilian" employment in § 10216(a) overrides the "membership in the National Guard" requirement set forth in that same statute and in 32 U.S.C. § 709.

10

determination that the WEP applies in the plaintiff's case.  (See filing 20 at 5, 7-8.)  The defendant argues that this finding is erroneous and must be reconsidered.  (Def.'s Br., filing 23, at 7-8.)  I disagree.

Citing United States v. Mead Corp., 533 U.S. 218, 226-27, 230-31 (2001), and Washington State Department of Social Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 (2003), the defendant suggests that his interpretation of the WEP is entitled to Chevron deference.  (See Def.'s Br., filing 23, at 7.)  In Mead Corp., the Supreme Court held "that administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."  533 U.S. at 226-27 (emphasis added).  The Commissioner's decision that the plaintiff's retirement insurance benefits should be reduced pursuant to the WEP was not "promulgated in the exercise" of his "authority to make rules carrying the force of law."  In other words, the Commissioner's decision in this case does not represent "the legislative type of activity that would naturally bind more than the parties to the ruling."  Id. at 232.  I find that neither Mead Corp. nor Keffeler, which simply notes that Social Security regulations may be owed Chevron deference, see 537 U.S. at 382, 390, support the defendant's claim that deference is owed to his decision in this case.

**IT IS ORDERED** that the Commissioner of Social Security's motion to alter or amend the judgment, filing 22, is denied.

Dated April 14, 2009.

BY THE COURT

s/  Warren K. Urbom
United States Senior District Judge

11